**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

CORTLAND LINE HOLDINGS LLC and
JOHN WILSON,

                  Plaintiffs,

     v.                                                                    5:18-cv-307
                                                                              (TJM/ML)
JASON LIEVERST,

                  Defendant.

_____

**Thomas J. McAvoy, Sr. U.S.D.J.**

### DECISION & ORDER

Before the Court is bankruptcy Trustee Edmund J. Wood's motion for recovery of

security pursuant to Federal Rule of Civil Procedure 65(c).  See dkt. # 212.  Plaintiffs

oppose the motion  The parties have briefed the issues and the Court has determined to

decide the matter without oral argument.

### I.   BACKGROUND

Plaintiff Cortland Line Holdings, LLC ("Cortland Line") manufacturers fly-fishing

equipment.  For a period of time, Plaintiffs employed Defendant Jason Lieverst, a

professional angler known worldwide for his innovative fly-fishing techniques, to help

market its products.  Defendant's employment contract contained a restrictive covenant

preventing Lieverst from engaging in certain activities for two years following the end of his

employment.  Plaintiffs filed a Complaint in State court and sought injunctive relief against

the Defendant when Defendant allegedly began soliciting Plaintiffs' customers for a fly-rod business he had started.  Plaintiffs contend that these actions violated the restrictive covenants in Defendant's contract.  Plaintiffs' Complaint alleged contract and tort claims against Defendant.  Defendant denies that he was ever an employee and argues that the restrictive covenants are not enforceable against him.

Upon filing the Complaint, Plaintiffs sought injunctive relief from the State court, which that court granted.  Plaintiffs moved to extend these restraints after Defendant removed the case to this Court. See dkt. # 9.  The Court granted the motion, extending the restraints until the Court had time to consider Plaintiffs' motion for a preliminary injunction. See dkt. # 18.  The Court, after considering the parties' arguments, granted that preliminary injunction motion.  See dkt. # 53.  The Court required the Plaintiffs to post a $200,000 bond as security.  Id.  Defendant filed a motion to dismiss portions of Plaintiffs' Complaint.  See dkt. # 48.  The Court denied that motion from the bench after oral argument.  See dkt. entry 5/14/18.  The Court later  granted the Defendant's motion to alter the terms of the injunction to clarify the work he was permitted to engage in related to fly fishing.  See dkt. # 73.

The Court's preliminary injunction remained in place as the parties engaged in discovery.  Defendant's financial situation changed as the case ground on.  Documents in the record indicate that he filed a petition for Chapter 7 bankruptcy relief in the United States Bankruptcy Court for the Western District of Washington on October 12, 2018.  See dkt. # 198-2.  That filing delayed discovery and somewhat altered the terms of the action, but the Washington court discharged the bankruptcy on January 16, 2019.  See dkt. # 198-3.

The parties resumed discovery, requiring intervention from the Magistrate Judges assigned to the case to resolve disputes raised by either side on more than one occasion. Eventually, Defendant filed a motion to set aside the preliminary injunction. See dkt. # 144.  Having been informed that the parties had an agreement to settle the case, the Court delayed ruling on that motion.  Negotiations to finalize the settlement failed, however, and Plaintiffs filed a motion for leave to voluntarily dismiss the case.  On March 23, 2020, the Court granted the Plaintiffs' motion and dismissed the case without prejudice.  See dkt. # 204.  The Court's Order permitted any party to seek attorneys fees and costs by motion within thirty days, and permitted the bankruptcy Trustee to seek recovery of the security that Plaintiffs' provided for the preliminary injunction.  Defendant filed a motion for attorneys fees, which the Court denied on August 18, 2020.

Presently before the Court is the Trustee's motion for recovery of the bond, as well as attorneys' fees.  Plaintiffs oppose the motion.  The parties have briefed the issues, and the Court will decide the motion without oral argument.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  FED. R. CIV. P. 65(c).  This rule serves to "'assure[] the [restrained] party that it may readily collect damages from the funds posted in the event that it was wrongfully [restrained], and that it may do so without further litigation and without regard to the possible insolvency of the plaintiff." U.S. D.I.D. Corp. v. Winstream Comms, 775 F.3d 128, 135 (2d Cir. 2014) (quoting Nokia Corp. v.

3

Interdigital, Inc., 645 F.3d 553, 558 (2d Cir. 2011) (alterations in original)).  "A party has been 'wrongfully enjoined' under Fed. R. Civ. P. 65(c) if it is ultimately found that the enjoined party had at all times the right to do the enjoined act."  Blumenthal v. Merril Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1054 (2d Cir. 1990).  "The focus of the 'wrongfulness' inquiry is whether, in hindsight in light of the ultimate decision on the merits after a full hearing, the injunction should not have issued in the first instance."  Id. "[A] wrongfully enjoined party is entitled to a presumption in favor of recovery" of the bond. Nokia Corp., 645 F.3d at 558.  While that presumption applies, a "wrongfully enjoined party must first demonstrate that the damages were proximately caused by the wrongful injunction."  Id. at 559.

III.   **ANALYSIS**

The Trustee argues that the bankruptcy estate should recover the bond because the Court wrongfully issued the injunction.  He contends that discovery in this case revealed that many of the facts on which the Court based the injunction were not accurate, and that the injunction would not have been entered if the Court had been apprised of those facts.

Plaintiffs' position is partly that the Trustee attempts to reargue the preliminary injunction motion.  In reply, the Trustee argues in part that the Plaintiffs' position applies the wrong legal standard.  The Trustee points out that the issue here is whether the Court "wrongfully enjoined or restrained" the Defendant, an issue that requires the Court to reexamine the original decision in light of facts collected since then which undermine the Court's original decision to enjoin the Defendant.  The Court largely agrees with the Trustee in this respect.  The Trustee's motion should be considered in light of all the

4

evidence in the case.  Indeed, many Rule 65(c) motions appear only after an appeals

Court concludes that the injunction was improper.  See, e.g., Nokia Corp. v. Interdigital,

Inc., 645 F.3d 553 (2d Cir. 2011) (Court of Appeals vacated an injunction and remanded,

restrained party then sought relief pursuant to Rule 65(c); NCAA v. Governor of N.J., 939

F.3d 597, 606 (3d Cir. 2019) ("Because a court can only be certain of an enjoined party's

rights after a case has been fully litigated, 'wrongfully enjoined' can only be determined

after a final judgment on the merits.").  This case is in a unique situation, because the

Plaintiffs voluntarily dismissed the case before a final judgment on the merits, but that does

not necessarily mean that Court cannot determine, based on the facts developed in the

case, whether the injunction was "wrongful."  In a somewhat analogous situation, the Court

of Appeals has also concluded that the question of wrongful restraint remains open when

the party that obtained a temporary restraining order voluntarily dismissed the case after

the trial court denied a motion for a preliminary injunction.  U.S. D.I.D., 775 F3d at 137-40.


In his reply brief, the Trustee cites to Wright and Miller's Federal Practice and

Procedure to argue that Plaintiffs' voluntarily dismissal "has the same effect as a final

decision that the parties seeking the injunction were not entitled to it."  Trustee's

Response, dkt. # 231, at 11 (quoting 11A Charles Alan Wright & Arthur R. Miller, FEDERAL

PRACTICE AND PROCEDURE, § 2972).  The section of the treatise from which the Trustee

quotes addresses motions to recover on a security.  The treatise concludes that such a

motion:

> will not precede the final determination on the merits.  In the case of an injunction
> bond, the claim against the surety does not accrue until it is finally determined that
> plaintiff was not entitled to the restraining order or injunction, or until something

5

occurs that is the equivalent of a decision on this question.  A final determination may take the form of a decree dismissing the suit, total or partial dissolution of the injunction, or the failure to carry the burden of proof at the hearing on the preliminary injunction.  A voluntary dismissal or abandonment of the request for injunctive relief, if it comes after a temporary restraining order has been granted or after defendant has filed an answer or counterclaim, has the same effect as a final decision that the parties seeking the injunction were not entitled to it.  However, dismissal of the action by the party who instituted it, if consented to by the party, precludes proceeding against the bond.

Wright and Miller, § 2972.

This wording would seem to support the Trustee's position that Plaintiffs' voluntary dismissal of the case constitutes an admission that the injunction the Court issued was wrongful.[1]  Cases cited by Wright & Miller indicate that a voluntary dismissal of a case after a party obtains a temporary restraining order indicate that the party seeking dismissal admits the impropriety of the original restraint.  See, General Broadcasting System v. Bridgeport Broadcasting Station, 53 F.2d 664, 664 (D. Conn. 1931) (plaintiff, "by its motion asking that its own bill of complaint be dismissed, . . . admits its failure to prevail"); Middlewest Motor Freight Bureau v. U.S., 433 F.2d 212, 243 (8th Cir. 1970) (noting "the

---

[1]The Supreme Court of Kansas long ago explained the reason for this rule in a case where the plaintiff had obtained a temporary injunction and then had the case dismissed without prejudice:

If the law were otherwise, a party might commence an action, obtain a temporary injunction, execute his undertaking, put the defendant to great trouble, inconvenience, and expense, and then, after all the evidence in his case was presented, relieve himself from liability upon the injunction undertaking by simply dismissing his action before the final submission of the case to the jury or to the court.  In such a case the undertaking would be no protection to a defendant, and the statute ought not to be construed to permit such hardship, if any other construction is reasonable and within the spirit of the law.

Mitchell v. Sullivan, 1 P. 518, 519 (KS 1883).

6

generally adopted proposition that the voluntary dismissal of an injunction suit by a plaintiff without the consent of the defendant is a determination of the merits of a controversy so as to render the plaintiff and his surities liable on the injunction bond.").

The Court is unconvinced by this argument that the Court is required to find that Plaintiffs' voluntary dismissal of the case requires a finding that Defendant was wrongfully restrained.  The Second Circuit Court of Appeals, citing a case relied on by the treatise the Trustee cites, has concluded that "[w]hen a plaintiff files a voluntary dismissal under Rule 41(a)(1)[2], the district court's denial of the plaintiff's motion for a preliminary injunction *may* establish that the TRO should not have been granted and the defendant was wrongfully restrained by a preceding TRO."  U.S. D.I.D., 775 F.3d at 140 (citing Middlewest Motor Freight Bureau, 433 F.2d at 243) (emphasis added).  In U.S. D.I.D., the Court of Appeals analyzed the district court's decision that the TRO had been wrongfully issued because the plaintiff voluntarily dismissed the complaint and concluded that recovery was not proper on the entire bond because defendant could not "claim damages based on wrongful restraint when it was not entitled to take the action that was restrained" during a particular period.  Id. at 142.  Thus, even if the Court had dismissed the case pursuant to Rule 41(a)(1), the Court would be required to consider whether the defendant was entitled to take the actions that had been restrained by the Court's earlier injunction.  See, e.g., Belfer v. Minko, No.

---

[2]Rule 41(a)(1) permits a plaintiff to voluntarily dismiss a case without prejudice when the party files notice "before the opposing party serves either an answer or a motion for summary judgment[.]" Fed. R. Civ. P. 41(a)(1)(i).  The Defendant here filed an answer. See dkt. # 72.  The Court, in permitting the Plaintiffs voluntarily to dismiss the action, applied Rule 41(a)(2), which provides, in relevant part, that "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper . . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice."  See dkt. # 204.

05CV02473, 2008 WL 163615 at *2 (N.D. OH Jan. 17, 2008) (rejecting notion that voluntary dismissal required recovery of bond for defendants because of long procedural history of the case, the lack of any finding that the TRO issued was improper, a finding by a district court in the Northern District of Illinois that such cases must be examined on a case-by-case basis, and because there was no evidence that plaintiffs abused the process to obtain a TRO that they then abandoned at first opportunity).

Thus, to the extent that the Trustee's argument is that the Court must find Defendant was wrongfully restrained because the Court granted Plaintiffs' motion to voluntarily dismiss the case without prejudice, the Court will deny the motion.  As the Court explained in great detail in granting the Plaintiffs' motion to dismiss, the history of this case indicates that the reason the Plaintiffs sought to dismiss the case was not related to the merits of their case, but due to the fact that Defendant's bankruptcy filing had so delayed this matter that there was no reason for the Plaintiffs to continue.  The restrictive covenants that had formed the basis for the preliminary injunction had expired, and the bankruptcy meant that any attempt to recovery monetary damages had become futile.  Plaintiffs did not manipulate the system to obtain an injunction and then abandon the case at the first opportunity.  They litigated the case until circumstances made continuing fruitless.  The Court has already examined whether Plaintiffs hid evidence to make an injunction seem more credible and concluded they have not.[3]

_____

[3]In his reply brief, the Trustee argues that Plaintiffs have admitted to a wrongful restraint.  He points out that in arguing that Defendant did not suffer any actual damages from the restraints the Court imposed, Plaintiffs contended that Defendant could have accepted an offer of employment from a reels company while under the injunction's strictures "if [he] stayed away from those customers and vendors with whom he did business at Cortland Line."  The Court does not view this statement as an admission of

Moreover, in deciding that issue and the Defendant's motion for attorneys' fees, the Court addressed the general issue raised by the trustee's motion: that the Court's Temporary Restraining Order and the Preliminary Injunction should not have been issued because new facts have come to light which destroy the basis for that injunction. The Court undertook an inquiry very similar to the "wrongfulness" inquiry described above and rejected arguments similar to those the Trustee makes now. As a general matter, the Court relies on those earlier opinions to conclude that the Court did not "wrongfully" issue the previous injunction because the Court has concluded that no evidence indicates that the Defendant had a right to engage in the behavior that the Court restrained.

The Court will, however, address each of the three specific arguments that the Trustee makes concerning the wrongfulness of the injunctive relief the Court issued.

### A.    Whether Defendant Had a Unique Status

The Trustee first takes issue with the Court's conclusion that the Plaintiffs suffered irreparable harm from Defendant breaching the restrictive covenants in his contract. While the Trustee couches this argument as different from an attempt to convince the Court to reconsider its opinion, but instead as an effort to get the Court to look at evidence uncovered since the original decision which demonstrates that the Court should not have issued the injunctive relief, the Trustee's argument is not about changed factual

---

wrongful restraint. Plaintiffs here argue that the restraint was not as restrictive as Defendant claims it was, and that Defendant had many opportunities to work in fly fishing during the period the injunction was in place. Indeed, in considering the balance of the hardships in imposing the injunction, the Court found that "the operation of the non-compete provision" would allow the Defendant "to earn a living from the fly-fishing industry, even if he will not be permitted to sell fly rods or use information he has about Plaintiffs' business in aid of his sales efforts." Dkt. # 53 at 21. Pointing out the limits on the nature of a restraint is not an admission that the restraint was wrongful.

circumstances.  Instead, the Trustee essentially argues that the Court's anlaysis in the preliminary injunction decision misconstrued the legal standard and failed to discuss the relevant facts.

The Court found that Defendant's skills were "unique" and thus justified enforcing those restrictive covenants.  The Trustee here argues that the Court failed to provide a detailed and case-specific analysis of the reasons why the Defendant's skills were of the type that could be the subject of such a restrictive covenant.  He does not point to any evidence that was not available to the Court when the Court granted the preliminary injunction on this basis.  Instead, the Trustee points to case law that establishes that:

> In analyzing whether an employee's services are unique, the focus today is less on the uniqueness of the individual person or the employee . . . [but is] more focused on the employee's relationship to the employer's business to ascertain whether his or her services and value to that operation may be said to be unique, special, or extraordinary; that inquiry, because individual circumstances differ so wildly, must of necessity be on a case-by-case basis.

Trustee's Brief, dkt. # 212-2, at 123 (quoting Boston Laser, Inc. v. Qinxin Zu, 2007 U.S. Dist. LEXIS 78021 at *23 (N.D.N.Y. Sept. 21, 2007)).  The Trustee argues that the Court's examination of the nature of the Defendant's services to the Plaintiff did not receive "the detailed, case-by-case analysis the case law requires."

The Trustee's arguments here, however, are unpersuasive.  First, the Court has already explained in previous decisions why the evidence which the Trustee uses to dispute the Court's finding on uniqueness supports that finding.  The Court relies on those previous opinions.  Second, the Trustee has not persuaded the Court that any evidence or

legal argument exists to support a different conclusion.[4]  The Court, looking backwards and considering the evidence as the Trustee requests, cannot find wrongful restraint on this basis.  The Court will deny the motion in this respect.

### B.    Relationship with Confidential Vendor

The Trustee next argues that the Court did not have accurate information about a vendor with whom Cortland Line supposedly had a confidential relationship at the time the Court issued the preliminary injunction.  Accurate information about this vendor, the Trustee argues, would have demonstrated to the Court that the Defendant had a right to engage in the conduct the Court restrained.  As such, the Trustee contends, the injunction was wrongful.  Plaintiffs respond that evidence in the case supports a finding that Defendant had confidential information about a vender that exclusively supplied items to Cortland Line, and that Cortland Line kept this relationship confidential.  Moreover, Defendant obtained this information due to his employment with Cortland Line, and Plaintiffs contend that Defendant attempted to use this confidential information in other employment in violation of the restrictive covenants in his contract.

Courts in New York "recognize the legitimate interest an employer has in safeguarding that which has made the business successful and to protect himself against

---

[4]The Court understands why the Plaintiffs would characterize these arguments as an attempt to "reargue" the preliminary injunction decision, since the evidence supporting them and the legal basis for them were available at the time the Court made its earlier decision.  Indeed, if this were a motion for reconsideration, the Court would deny the motion.  See Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 41 (2d Cir. 2012) (a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking 'a second bite at the apple[.]'") (quoting Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998)).

deliberate surreptitious commercial piracy." Reed, Roberts Associates, Inc. v. Strauman, 40 N.Y.2d 303, 308 (N.Y. 1976).  As here, courts enforce "restrictive covenants . . . to the extent necessary to prevent the disclosure of trade secrets or confidential customer information.  Id.  In other words, the "cognizable employer interests" a restrictive covenant can protect include "misappropriation of the employer's trade secrets or of confidential customer lists, or protection from competition by a former employee whose services are unique or extraordinary."  Bdo Seidman v. Hirshberg, 83 N.Y.2d 382, 389 (N.Y. 1999).

The Court notes that the information that Defendant allegedly misappropriated has been provided the Court under seal.  The Court has examined this information and concludes that the confidential information was subject to protection by a restrictive covenant: it involved secrets concerning the methods and sources of production of certain goods Plaintiffs offered for sale.  The Trustee has not persuaded the Court that Defendant had a right to use those secrets, as the information appears to the Court the type a restrictive covenant could legitimately protect.  The Trustee has not persuaded the Court that the Defendant was wrongfully restricted on this basis.  The Court will deny the motion in this respect as well.

### C.    Admission of Irreparable Harm

As a third grounds for finding the injunction wrongful, the Trustee argues that the Court should not have found that provisions in the Defendant's contract amounted to an admission that Plaintiffs would suffer irreparable harm if he violated the non-compete clauses in the parties' contract.  The Trustee points to arguments that Plaintiffs made in their reply brief for their preliminary injunction motion and argues that those arguments misstated the law.  The Trustee also argues that this briefing failed to cite to other case law

from a United States District Court in California that would undermine the argument that Plaintiffs made regarding irreparable harm based on contract provisions.  Moreover, he contends, the Court should not have found irreparable harm based on the contract because the contractual provision that allegedly entitled Plaintiffs to an injunction did not contain the phrase "irreparable harm."

The Court addressed arguments about this contractual provision in the Court's decision granting the preliminary injunction.  The Trustee essentially argues that the Court got that decision wrong.  The Trustee does not even attempt to offer an argument based on new evidence from discovery that undermines the Court's conclusions.  The Court relies on its earlier findings on the law and facts of the case and finds that Defendant did not have a right to engage in the behavior that the Court enjoined and will not repeat that analysis here.  The motion will be denied in this respect as well.

**D.    Damages**

If the Court had concluded that the Defenant had been wrongfully restrained, the Court would need to consider his damages and determine how much of the bond should be returned.  As the Court has concluded that Defendant is not entitled to recover the bond because he did not have the right to engage in the conduct that the Court restrained, the Court will decline to consider the amount of damages to which he would be entitled.

**IV.    CONCLUSION**

For the reasons stated above, the Court will DENY the Trustee's motion for recovery of the bond, dkt. # 212.

**IT IS SO ORDERED**.

**Dated:** October 13,  2020

Thomas J. McAvoy
Senior, U.S. District Judge